[Docket Nos. 16, 20]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MATTHEW CALIO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS, et al.,<br><br>　　　　　Defendants. | Civil No. 19-8393 (RMB/AMD)<br><br>**MEMORANDUM OPINION & ORDER** |

**APPEARANCES:**

WILLIAM B. HILDEBRAND
LAW OFFICES OF WILLIAM B. HILDEBRAND, LLC
36 TANNER STREET, SUITE 110
HADDONFIELD, NEW JERSEY 08033
　　　*For Plaintiff*

HOWARD LANE GOLDBERG
OFFICES OF CAMDEN COUNTY COUNSEL
520 MARKET STREET, COURTHOUSE – 14TH FLOOR
CAMDEN, NEW JERSEY 08102
　　　*For Defendant*

**RENÉE MARIE BUMB, United States District Judge**

　　　This matter comes before the Court on the parties' opposing motions for summary judgment. [Docket Nos. 16, 20.] For the reasons set forth below, the Court will administratively terminate the motions and order the parties to submit supplemental briefing. Because this Memorandum Opinion is written primarily for the parties, the Court will only recite those facts necessary to guide the parties' supplemental briefs.

Plaintiff Matthew Calio is employed by Defendant Camden County Correctional Facility ("CCCF"), where he has been a Corrections Officer since March 2001. When not working, he assists with taking care of his mother, who is 76 years old and has Alzheimer's/dementia. It is undisputed that his obligations to his mother qualify for protected leave under the federal Family and Medical Leave Act ("FMLA") and the New Jersey Family Leave Act ("NJFLA").

Plaintiff alleges in this case that Defendant interfered with his rights under those laws in several ways. The catalyst for Plaintiff's grievances is Defendant's initial decision with respect to his application for intermittent FMLA/NJFLA leave in late 2018. Although Defendant granted Plaintiff's request, Plaintiff argues that its decision constituted "unjustified and overly harsh restrictions on his FMLA/NJFLA leave." [Docket No. 16-1, at 10 (alterations omitted).] The majority of Plaintiff's claims depend on this allegation.

Plaintiff's application included a certification from his mother's health care provider Dr. Paul Cohen, as Defendant required. The certification described her condition, her needs, and approximations of how often Plaintiff would need to care for her. Part B of the certification form addresses the "amount of care needed" and includes four questions relevant to this case. Question 8 asks whether the patient will "require care on an

intermittent or reduced schedule basis," and question 9 asks for an "[e]stimate [of] the hours the patient needs care on an intermittent basis, if any." [See, e.g., Docket No. 16-7, Exhibit H (emphasis added).] Meanwhile, question 11 asks whether the condition will "cause episodic flare-ups periodically preventing the patient from participating in normal daily activities," and question 12 asks for an "estimate [of] the frequency of flare-ups and the duration or related incapacity that the patient may have over the next 8 months." [See, e.g., id.]

In support of the application in question, Dr. Cohen answered question 8 in the affirmative. [Id., Exhibit I.] But on question 9, he did not provide an estimate of how many hours per day or days per week Plaintiff's mother would need care; rather, he only specified that she would need care on an intermittent basis for a "lifelong" period. [Id.] Next, Dr. Cohen also answered question 11 affirmatively. [Id.] In response to question 12, he estimated that Plaintiff's mother would have a flare up once every four weeks, lasting eight hours or five days per episode. [Id.] Based on that information, Defendant's employee, Peter Celeste approved Plaintiff for one five-day absence per month. [Id.]

At no time prior to filing his written complaint did Plaintiff take issue with that determination. Indeed, the record

3

appears to show an open dialogue between Plaintiff and his employer. As best this Court can determine, Plaintiff's complaints stem from the decision granting him one five-day FMLA absence per month. When he exceeded that allotment twice in January 2019, it led to repercussions with which Plaintiff takes issue. First, Defendant suspended Plaintiff for three days — one day for the first unapproved absence, and two days for the second unapproved absence — which Plaintiff now claims constituted unlawful interference with his FMLA and NJFLA rights.[1] Defendant also converted those days from FMLA/NJFLA leave days to regular sick days, which Plaintiff also alleges constitutes interference with his statutory rights. Finally, Defendant warned Plaintiff that if he continued to exceed his allotment, he would need to provide supplemental information from his mother's health care provider or else he would be subject to discipline.[2]

The overwhelming majority of Plaintiff's claims, therefore, all turn on the legitimacy of Defendant's initial approval of Plaintiff's late 2018 request. If Defendant's decision to grant Plaintiff one five-day absence per month was permissible under

---

[1] Plaintiff was never required to actually serve these suspensions.

[2] Plaintiff's other contention — that Defendant listed the number of FMLA days Plaintiff had taken in the "work performance deficiencies or job behavior requiring improvement or correction" section of his performance review — preceded the approval discussed above.

4

the FMLA/NJFLA, then Plaintiff's subsequent arguments would be fruitless. After all, it is not in dispute that he exceeded his allotment of leave. Therefore, any repercussions for his unexcused absences (here, his suspensions, the conversion of FMLA days to regular sick days, and being required to provide additional certification to take more FMLA/NJFLA leave) would be entirely justified. Conversely, if Defendant's initial decision was erroneous in terms of the FMLA/NJFLA, then it stands to reason that the repercussions Plaintiff suffered for exceeding his allotment could amount to interference of his statutory rights.

Unfortunately, the parties' briefings with respect to their cross motions for summary judgment do not adequately address this issue. The parties do not flesh out what procedure Defendant was required to follow, pursuant to the FMLA and NJFLA, in deciding Plaintiff's allotment of intermittent leave. Nor do the parties discuss the standard of review that the Court must apply in determining whether or not Defendant's initial decision comported with the relevant statutes and regulations. In short, the Court cannot address the issues raised by the parties in their briefs without first addressing whether Defendant's initial determination was valid. It bears noting, however, that there is nothing in the record to indicate that Plaintiff believed that Defendant's determination was

5

unreasonable.[3] In fact, he seemed to accept the determination without objection.

The Court notes that the facts of this case make it appear that Defendant went to lengths to accommodate Plaintiff's needs. First and foremost, Defendant granted Plaintiff <u>precisely</u> the amount of intermittent leave that Dr. Cohen estimated in his certification. Plaintiff presents no evidence of ever contesting this decision, even in spite of Defendant's alleged repeated attempts to have Plaintiff file supplemental certification. Moreover, Defendant took an unusually long time to issue its disciplinary decision against Plaintiff — apparently due to its attempts to encourage Plaintiff to get an additional certification — only to never even enforce the decision.

Nevertheless, without additional briefing from the parties, the Court is not in a position to rule given the lack of clarity as to Plaintiff's claims. Does he challenge the validity of Defendant's initial decision with respect to his request for intermittent leave? If so, what is the standard? Do issues of estoppel come into play? Since Plaintiff's case turns almost entirely on whether Defendant's initial decision was valid, the Court will require the parties to submit supplemental briefing on that issue.

---

[3] Plaintiff's extensive discussion of his mother's disease is not helpful.

6

**THEREFORE, IT IS** this  **28th**  day of  **September**  2020,

**ORDERED** that the parties' opposing Motions for Summary Judgment [Docket Nos. 16, 20] be **ADMINISTRATIVELY TERMINATED**; and it is further

**ORDERED** that Plaintiff shall file a supplemental brief addressing the issues discussed above by no later than **Friday, October 23rd, 2020.** Defendant shall file its response no later than **Friday, November 6th, 2020.** Plaintiff shall file his reply by no later than **Friday, November 13th, 2020.**

    s/Renée Marie Bumb
    RENÉE MARIE BUMB
    United States District Judge