[Docket Nos. 16, 20]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MATTHEW CALIO,

        Plaintiff,

    v.

CAMDEN COUNTY BOARD OF
CHOSEN FREEHOLDERS, et al.,

        Defendants.

No. 19-8393 (RMB/AMD)

OPINION

**APPEARANCES**
William B. Hildebrand
Law Offices of William B. Hildebrand, LLC
36 Tanner Street, Suite 110
Haddonfield, New Jersey 08033

    *On behalf of Plaintiff*

Howard Lane Goldberg
Office of Camden County Counsel
520 Market Street Courthouse, 14th Floor
Camden, New Jersey 08102-1375

    *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the parties' opposing Motions for Summary Judgment. [Docket Nos. 16, 20.] Plaintiff Matthew Calio ("Calio" or "Plaintiff") seeks partial summary judgment in his favor on liability only. [Docket No. 16.] Defendant Camden County Board of Chosen Freeholders d/b/a Camden County Department of Corrections ("CCDC" or "Defendant") opposes this Motion, and filed a Cross Motion for

Summary Judgment in its favor, which Calio opposes.[1] [Docket Nos. 20, 21.] For the reasons set forth herein, both parties' Motions will be denied without prejudice.

## I.   <u>FACTUAL BACKGROUND</u>

This case arises out of CCDC disciplining Calio for his allegedly improper use of sick leave under the Family and Medical Leave Act ("FMLA") and New Jersey's Family Leave Act ("NJFLA").[2] [Docket No. 6.] CCDC has employed Calio as a corrections officer since 2001. [Docket No. 16-2, ¶ 1.] Calio sought approval to take intermittent FMLA leave on four occasions: once in 2016, once in 2017, and twice in 2018. [Docket No. 16-2, ¶ 9.] CCDC denied the 2016 application because Calio had not worked enough hours to qualify for FMLA, but approved the 2017 and both 2018 applications. [Docket No. 16-10, at 8–9.] Calio requested this leave each time in order to care for his mother, who suffers from dementia and needs help with day-to-day tasks.[3] [<u>See</u> Docket No. 6, ¶ 7–8.] The issues in this case arise out of FMLA leave that Calio took under the second 2018 approval, in which CCDC approved Calio to take intermittent leave between December 12, 2018 and June 12, 2019. [Docket No. 6.] CCDC approved Calio to take leave up to one absence per month, for

---

[1] Defendants XYZ Corp. 1–10 and ABC 1–10 have not joined CCDC's Cross Motion or otherwise explicitly opposed Calio's Motion.

[2] Because of the similarity between the FMLA and NJFLA statutes, courts generally apply the same standards and framework to claims under the FMLA and NJFLA. <u>See</u> <u>Wolpert v. Abbott Labs.</u>, 817 F. Supp. 2d 424, 437 (D.N.J. 2011) (citing <u>Santosuosso v. NovaCare Rehab.</u>, 462 F. Supp. 2d 590, 596 (D.N.J. 2006). Unless noted otherwise, the Court's discussion of Calio's FMLA claims also applies to his NJFLA claims.

[3] All parties appear to agree that this medical condition qualifies Calio, as her son, to be entitled to take intermittent FMLA leave to care for her.

up to five days per absence. [Docket No. 6, at 17–19.] As part of this most recent application, Calio submitted a medical certification on which the certifying physician estimated that Calio's mother would have intermittent flare ups that would cause her to become incapacitated one time every four weeks, with each flare up lasting eight hours or five days per flare up. [Docket No. 16-7, at 25.] It was on this basis that CCDC approved Calio's intermittent FMLA leave for one absence per month for a duration of up to five days per absence. [Docket No. 16-2, ¶ 16.]

Calio took his first FMLA day of this most recent approval period on December 15, 2018. [Docket No. 27, at 37.] Calio then took additional FMLA days on January 6, January 14, and January 28, 2019. [Docket No. 6, ¶ 13; Docket No. 20-1, at 6.] On February 1, 2019, Calio's supervisor, Lt. Charyetta Hinson, submitted two staff complaint reports recommending that Calio be disciplined for using FMLA in excess of what he had been approved for because his January 6 and January 28 absences were both taken within 30 days of a preceding FMLA absence—in other words, Calio had only been approved for one absence per month (which could last up to five days) and, so, January 6 and January 28 were unapproved. [Docket No. 27, at 27.]

The parties dispute whether or not Hinson asked Calio to recertify his leave—that is, to seek new documentation from his mother's doctor in order to make adjustments to his approved FMLA leave—before issuing these staff complaints. [Docket No. 21, at 12–13.] The record is undisputed, however, that Calio never sought a change to his FMLA-approved leave. On February 19, 2019, CCDC provided Calio with two notices of disciplinary action, notifying him that he would be suspended as a result of exceeding the frequency of his allotted FMLA days on January 6 and January 28. [Docket No. 27, at 30–

31.] On March 7, 2019, one of CCDC's Human Resources representatives, Lt. Peter Celeste, provided a letter to Calio requiring him to submit a doctor's note for any sick time used going forward, and noting that failure to submit such a note would result in disciplinary action. [Docket No. 6, at 27.]

On March 12, 2019, Calio filed the instant Complaint with the Court. [Docket No. 6.] On March 26, 2019, CCDC issued Calio a letter notifying him that the two absences at issue (January 6 and January 28) would be converted to sick days, closing the matter, and noting that he had been asked to recertify if his FMLA needs had changed. [Docket No. 27, at 33.] There appears to be no direct evidence that CCDC was aware of the filing of the Complaint at the time of the decision to convert the two days at issue to sick leave. On March 28, 2019, Lt. Celeste issued Calio a letter again requesting that he recertify his FMLA if he needed to take more than one absence per month. [Docket No. 27, at 35.]

## II.   <u>PROCEDURAL HISTORY</u>

Calio brought this suit alleging four Counts stemming from CCDC's alleged violations of his federal FMLA and state NJFLA rights. [Docket No. 6.] Counts One and Two allege that CCDC violated Calio's rights by unreasonably limiting his leave to one occurrence per month, and by disciplining him or otherwise interfering with his rights when he exceeded this limit. [<u>Id.</u>, ¶¶ 16–27.] Count Three alleges similar violations under the NJFLA. [<u>Id.</u>, ¶¶ 28–30.] Count Four alleges that CCDC violated Calio's FMLA and NJFLA rights in its March 7, 2019 letter requiring him to submit a doctor's note for any future sick time that he used going forward, allegedly as a result of him taking protected FMLA days. [<u>Id.</u>, ¶¶ 31–34.]

4

Calio filed the instant Motion for Partial Summary Judgment on January 31, 2020, seeking judgment in his favor on the issue of liability only. [Docket No. 16.] CCDC opposed Calio's Motion, and filed its instant Cross Motion for Summary Judgment on March 30, 2020. [Docket No. 20.] The Court administratively terminated the Motions on September 29, 2020, and ordered the parties to submit supplemental briefing. [Docket No. 22.] In accordance with the Court's order, the parties have submitted supplemental briefing in support of their respective Motions. [Docket Nos. 23, 26, 27.]

## III.   LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still

appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment."). However, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

## IV.   DISCUSSION

The FMLA is intended to allow employees to take reasonable unpaid leave for medical reasons, including to care for a parent who has a serious health condition, without fear of losing their job or being otherwise disciplined or penalized by their employer. 29 C.F.R. § 825.101. It is illegal "for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any right provided under [the FMLA.]" 29 U.S.C. § 2615(a).

If an employee's leave is foreseeable, they must provide their employer with advance notice that they will be taking such leave.[4] 29 C.F.R. § 825.304. The parties do not dispute that Calio followed the proper procedures to provide notice and apply for his initial FMLA approval, including seeking the appropriate medical certification. After the initial approval and certification, an employer is allowed to periodically request a recertification for an employee's previously approved FMLA. 29 C.F.R. § 825.308. This recertification can generally be requested no more often than every six months for a lifelong condition, unless an exception applies. 29 C.F.R. § 825.308(b). One of these exceptions is if circumstances described by the previous certification have changed significantly, with the frequency of the absence being specifically listed as being one such significant change. 29 C.F.R. § 825.308(c)(2). After being asked to recertify, the employee must provide the requested recertification to the employer within the time period specified by the employer, which must be a minimum of fifteen calendar days. 29 C.F.R. 825.308(d). The employee has the same obligations to participate and cooperate in the recertification process as in the initial certification process. 29 C.F.R. § 825.308(e). If the employee fails to provide a recertification

---

[4] While Calio argues that the leave was unforeseeable, he did provide advance notice and certification to CCDC to support future absences. [Docket No. 6, ¶ 10; Docket No. 16-7, at 17–26.] Notably, it is by definition impossible to provide advance notice for unforeseeable events. Accordingly, intermittent leave is mentioned in the regulations covering foreseeable notice, but is absent from the regulations covering unforeseeable notice. See 29 C.F.R. § 825.302–303. Because the leave's characterization as foreseeable or unforeseeable does not change the Court's analysis, this distinction is irrelevant in the instant motion.

within a reasonable time, then the employer may deny continuation of the FMLA leave protections until the employee provides a sufficient recertification. 29 C.F.R. § 825.313(c). "If the employee never produces the recertification, the leave is not FMLA leave." Id. In sum, the FMLA statutes and associated regulations make it clear that an employer may not interfere with, or otherwise attempt to deny, the right of an employee to take FMLA leave for a legitimate reason. However, in order to make use of the protections that the FMLA provides, employees must follow the processes and rules laid out by the FMLA in order to provide appropriate notice, certification, and recertification (if applicable) to their employer.

At the outset, whether or not CCDC asked Calio to recertify the frequency of his FMLA leave and provided him the required minimum of fifteen calendar days to do so before disciplining him is critical to determining whether or not CCDC violated Calio's FMLA rights. See 29 C.F.R. § 825.308(d). While Calio argues that "this is a discipline case, not a recertification case," he overlooks the fact that the circumstances surrounding CCDC's request (or lack thereof) to have him recertify will be dispositive as to whether or not CCDC's disciplinary actions were prohibited by the FMLA. [Docket No. 27, at 6 (emphasis in original).] If CCDC properly asked Calio to recertify and he failed to do so in the provided time, then his absences at issue are not FMLA-approved absences and the protections that the FMLA affords do not apply. See 29 C.F.R. § 825.313(c). Likewise, if CCDC never properly asked Calio to recertify, then his absences would be protected under the FMLA and CCDC would not be able to discipline him for taking these protected absences.

Central to this material factual dispute is that the parties dispute when CCDC first asked Calio to recertify. Calio testified that he was not asked to recertify before being

disciplined, and that the first time that CCDC approached him regarding the absences was to impose official discipline with a suspension. [Docket No. 27, at 11.] This testimony and assertion directly contradict the testimony of CCDC's employees. Hinson testified that shortly after the January 6, 2019 absence[5] she spoke with Calio and asked him to "get his paperwork fixed," notified him that "he wasn't in compliance with what his paperwork said," and told him that "if you do need to use those days, you need to speak to your mother's doctor or human resources to get it rectified somehow."[6] [Docket Nos. 20-9, 20-10.] Because a request for recertification—and not an initial certification—is at issue, an oral request to provide recertification is sufficient. 29 C.F.R. § 825.305(a). Calio's testimony also appears contradictory, as he actually testified that Hinson, Celeste, and another individual talked with him before Hinson issued the staff complaints, although he does not specify when this conversation took place, or whether he was explicitly asked to recertify. [Docket Nos. 20-15, 20-16.]

There is additional evidence that points to the possibility of an earlier recertification request having been made as CCDC urges this Court to find. Hinson testified that she noticed Calio's January 6th absence shortly after it was taken as part of her daily attendance review, however she did not issue the actual staff complaint reports until much later, on

_____

[5] Hinson did not provide a specific date when she allegedly spoke with Calio about the first absence and requested that he recertify, noting only that it was "after the first [January 6] incident." [Docket No. 20-9.]

[6] While Calio argues that Hinson was not responsible for requesting recertification and this responsibility actually fell to Celeste, the FMLA only requires that the "employer" request recertification. [Docket No. 27, at 7–8; 29 C.F.R. § 825.308.] Calio has made no argument that Hinson, his supervisor, would be unable to make this request on CCDC's behalf.

February 1, 2019. [Docket No. 20-9.] Hinson testified that it does not usually take nearly a month to issue a staff complaint report, but that she waited in order to give Calio an opportunity to recertify, and that she did not issue the complaint recommending discipline until after she had a chance to talk with human resources and confirm that Calio had not provided the requested recertification. [Docket No. 20-10.] An additional letter from Lt. James Richer to Calio dated March 26, 2019, also noted that Calio had been previously notified by Human Resources to recertify his FMLA if he needed to change the time(s) he was approved for, but that he had failed to do so. [Docket No. 16-9, at 6]

Although the record appears to support CCDC's position—that Hinson or another CCDC employee asked Calio to recertify—it becomes a credibility issue that this Court cannot resolve on summary judgment. Whether or not the conversations actually took place, as well as their content, is material to determining if CCDC improperly disciplined Calio, or if Calio instead forfeited his FMLA protections by failing to comply with the recertification request.

Also, the Court notes that even if Calio succeeds in proving that CCDC did not actually request recertification and therefore interfered with his FMLA rights, it is difficult for the Court to see what, if any, damages he will be able to prove or for that matter, whether he is entitled to any relief. Throughout the events at issue here, it appears that CCDC attempted to work with Calio and tried on multiple occasions to advise him of what he needed to do in order to update his FMLA leave to allow him a greater frequency of FMLA days. CCDC previously allowed Calio to take leave multiple days per month, approved his FMLA days for three times per month on one occasion, and gave him an "undetermined" frequency of leave on another occasion. [Docket No. 16-6, at 14; Docket

No. 16-7, at 2.] There is no evidence that CCDC would have been unwilling to grant a frequency of multiple absences per month, but Calio's most recent certification only noted a frequency of one time per month, which is effectively exactly what he was granted.[7] [Docket No. 16-7, at 17, 25.] In fact, much of the evidence put forward shows that CCDC was entirely willing to increase Calio's frequency of leave, with the only requirement being that he recertify. [See, e.g., Docket No. 20-10.] If Calio is successful in proving that CCDC did, in fact, fail to request a recertification before disciplining him, it appears that this stems from an internal miscommunication or break in procedure as part of a good-faith effort to correct a perceived issue with Calio's FMLA approval and not from an attempt to punish Calio for using his legitimate FMLA allowance.

On the other hand, Calio appears to have been unwilling to work with CCDC in order to correct any paperwork issues or update his leave allowance. While it is disputed whether Hinson orally requested for Calio to recertify before issuing the staff complaints, there are additional examples where Calio appears to have been unwilling to work with CCDC to come to an amicable resolution. When CCDC gave him an opportunity to rebut the February 1, 2019 staff complaint, Calio refused to do so, claiming that "I know how they all are, and I don't have any time for them." [Docket No. 20-16.] Calio also appears to have decided to refuse to recertify on principle even if he thought the request was justified,

_____

[7] Because four weeks is (with the exception of most Februarys) slightly less than one month, CCDC actually approved Calio for slightly less frequent leave than he requested. However, Calio does not seem to take issue with this slightly less frequent allowance and instead takes issue with the entirety of the frequency restriction.

because he was unhappy with the manner that his supervisors handled the situation and felt that they were in violation of the FMLA. [Docket No. 20-21.]

In the end, Calio was not terminated, demoted, or reassigned, nor did he otherwise suffer any adverse financial or employment effects. He concedes as much, but baldly claims he is entitled to equitable relief.[8] [See Docket No. 21, 21–24.] It is not at all clear what type of equitable relief Calio could be entitled to. Having conceded the issue of damages, Calio's only other demands are prospective injunctive relief and the expungement of his disciplinary record. [Docket No. 6, ¶¶ 24, 27, 30, 34.] Yet, the record does not demonstrate that absent a Court injunction CCDC will violate Calio's FMLA rights.[9] Likewise, it appears that CCDC has already expunged the relevant portions of Plaintiff's disciplinary record. [Docket No. 27, at 13.]

Finally, Calio alleges that CCDC's conversion of his absences into regular sick days constitutes interference with his FMLA rights, however the FMLA explicitly allows for an employer to require an employee to use their sick days concurrently with FMLA, as long as proper notice and designation was provided. [Docket No. 21, at 12; 29 C.F.R.

---

[8] While Calio also argues that he can recover for emotional distress under the NJFLA, the referenced statute does not appear to support this claim. [Docket No. 21, at 24; N.J. STAT. ANN. § 34:11B-11.]

[9] Moreover, to the extent Calio seeks attorney's fees in the event he ultimately prevails, [Docket No. 6, ¶¶ 24, 27, 30, 34], a reasonable fee award must be commensurate with the relief obtained, and it seems unlikely that any relief Calio could obtain would be more than de minimis. Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) ("[If] a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . [T]he most critical factor is the degree of success obtained.").

§ 825.702(d)(2).] Calio was provided with advance notice that he would be required to use his sick days for FMLA absences, and it appears that CCDC was acting in full compliance with the law and its policies when requiring Calio to use sick days for these absences.[10] [Docket No. 16-7, at 18.]

Calio alleges that the limitation that he could only take intermittent FMLA leave one time per month for a maximum duration of five days "interfered with and otherwise violated [his] rights under the FMLA" and that it constituted "unjustified and overly harsh restrictions" on his leave. [Docket No. 6, ¶ 21; Docket No. 16-10, at 9–10.] Calio submitted a certification saying that he expected flare-ups once every four weeks, which is the FMLA leave that CCDC approved. [Docket No. 16-7, at 25.] While Calio makes an argument that the certification should not have been interpreted as requesting one absence every four weeks and should have instead been interpreted as requesting leave any number of times, CCDC approved a previous six-month period of Calio's leave with a higher frequency listed in this same manner and Calio did not take issue with this approval. [Docket No. 16-6, at 14.] Calio was provided with this limitation from the outset based on his certification, and if it was overly restrictive or it was not what he had actually intended to request then he could, and should, have requested to have it increased.

---

[10] There is a chance that converting these days to sick days from FMLA days may have actually benefited Calio, since it is unclear whether they were counted towards his twelve-week FMLA allowance despite the fact that the FMLA allows CCDC to both count them against Calio's FMLA allowance <u>and</u> deduct them from his ordinary sick time allowance. 29 C.F.R. § 825.702(d)(2).

While Calio points to cases supporting his assertion that limitations on FMLA leave are de facto illegal, reading these cases does not lead to the conclusion that these limitations are illegal when they are simply the amount of leave that the employee requested in the first place. One case in particular that Calio cites actually notes that the recertification process exists specifically for the instance where an employee's FMLA leave needs change from those that he or she was initially approved for:

> [I]f the frequency and duration stated in the certification set a limit to the employee's entitlement to FMLA leave, there would be no need for the regulation that authorizes an employer to request recertification . . . . This regulation, as the district judge recognized, "contemplates the precise situation present here where an employee's frequency of absences exceeds what is described in the initial certification . . . ." [The employer] should have sought recertification when the frequency of [the employee's] absences exceeded what was estimated in his certification, rather than simply denying him leave.

Hansen v. Fincantieri Marine Grp., LLC, 763 F.3d 832, 842 (7th Cir. 2014) (citations omitted). As the Seventh Circuit noted, while the frequency and duration in the certification cannot be used to deny or otherwise interfere with FMLA leave that an employee would be entitled to, exceeding these certified frequencies or durations does trigger the recertification provisions and an employer is authorized to request such recertification. Id. If the employee is asked to recertify but fails to do so, then the leave is no longer considered FMLA leave. 29 C.F.R. § 825.313(c).

The situation in Hansen involving an employee exceeding the frequency of his or her certification is nearly identical to Calio's situation, with the exception that there is no evidence that Hansen's employer properly requested recertification before interfering with Hanson's FMLA leave. Hansen, 763 F.3d at 842. Indeed, Hansen highlights the fact that whether or not CCDC requested certification before disciplining Calio is a material fact in

determining whether Calio's FMLA rights were violated. The other main case that Calio points to involves a significantly different situation than the instant case, where an employer repeatedly refused to approve a reduced schedule that the employee requested and was supported by the certification. <u>Morin v. Hannaford Bros. Co., LLC</u>, 1:17-CV-50-GZS, 2018 WL 2746570 (D. Me. June 7, 2018).

Even Calio agrees that "CCDC had the right to issue the Designation Notice imposing the restrictions," and his argument is instead that it was "CCDC's <u>use</u> of the restrictions, not the restrictions themselves, that was unlawful." [Docket No. 23, at 12 (emphasis in original).] Setting aside the fact that it would be illogical to allow restrictions that cannot actually serve to restrict anything, it appears that Calio is conflating the fact that restrictions cannot be used to deny or interfere with legitimate FMLA leave with the fact that exceeding such restrictions can trigger the right of the employer to request recertification and the duty of the employee to comply with that request.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny both Calio's Motion for Partial Summary Judgment and CCDC's Cross Motion for Summary Judgment without prejudice. An accompanying Order shall issue.

August 6, 2021
Date

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

15