# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| MATTHEW CALIO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAMDEN COUNTY BOARD OF<br>CHOSEN FREEHOLDERS, *et al.*,<br><br>　　　　　Defendants. | Civil No. 19-8393 (RMB/AMD)<br><br>**OPINION** |

**APPEARANCES**

William B. Hildebrand
Law Offices of William B. Hildebrand, LLC
36 Tanner Street, Suite 110
Haddonfield, New Jersey 08033

　　*On behalf of Plaintiff*

Howard Lane Goldberg
Offices of Camden County Counsel
520 Market Street, Courthouse, 14th Floor
Camden, New Jersey 08102

　　*On behalf of Defendants*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon its request for additional briefing regarding the remaining issues in this case. [Docket No. 44.] Succinctly, the concern expressed by the Court was what issue(s), if any, remained for the Court to present to a jury. Of particular note was the parties' Final Joint Pretrial Order [Docket No. 37],

which did not appear to present the need for a trial in light of apparent concessions by Defendant and Plaintiff's apparent lack of damages. In essence, the Court advised the parties that summary judgment should, in effect, be reconsidered.

Plaintiff timely filed his response to the Court's request on March 2, 2022. [Docket No. 46.] Defendants timely responded on March 4, 2022. [Docket No. 47.] For the reasons expressed herein, the Court will dismiss Plaintiff's federal claim and decline to exercise supplemental jurisdiction.

I.   BACKGROUND

The Court incorporates the factual discussion from its August 6, 2021 Opinion. [Docket No. 29, at 2–4.] In that Opinion, the Court held that "whether or not [Defendants] asked [Plaintiff] to recertify the frequency of his FMLA leave and provided him the required minimum of fifteen calendar days to do so before disciplining him . . . will be dispositive as to whether or not [Defendants'] disciplinary actions were prohibited by the FMLA." [*Id.*, at 8.]

In the time since that decision, as noted, the parties filed their Joint Final Pretrial Order. [Docket No. 37.] The Court then held a Status Conference on November 22, 2021, at which it ordered the parties to file letters explaining why a trial is necessary in this matter, given Plaintiff's apparent lack of damages. [*See* Docket No. 39; Docket Nos. 40–42 (parties' letters).] Unsatisfied with the parties' initial responses, the Court ordered additional briefing on January 31, 2022. [Docket No. 43.] Specifically, the Court asked Plaintiff to address two issues: (1) what evidence Plaintiff intended to rely on in support of his seemingly belated claim for

2

injunctive relief regarding Defendants' alleged "policy and practice" of violating the FMLA; and (2) if the FMLA entitled Plaintiff to declaratory relief and, if so, whether the jury or the judge makes that judgment. [Docket No. 43, at 2.] The Court also asked Defendants to address whether they would concede to declaratory judgment or any of Plaintiff's other demands. [*Id.*] Having reviewed the parties' responses, [Dockets No. 44, 47], the Court will dismiss Plaintiff's federal claim and decline to exercise supplemental jurisdiction.

## II.   ANALYSIS

### A.   Injunctive Relief

Plaintiff claims he is entitled to injunctive relief with respect to Defendants' alleged "longstanding policy and practice . . . of strictly enforcing monthly frequency and duration limits on intermittent FMLA leave." [Docket No. 44, at 1.] Specifically, Plaintiff's latest brief argues that Defendants repeatedly "discipline[d] employees for exceeding the frequency or duration limits listed in the Designation Notice." [*See id.*, at 6.] In support, Plaintiff cites to various testimony that is **not** in the Joint Final Pretrial Order. Putting aside his belated claim for injunctive relief, Plaintiff mischaracterizes his case in two ways. First of all, Plaintiff appears to fundamentally misunderstand how intermittent FMLA leave works. He repeatedly alleges that certain of Defendants' employees were entitled to leave, for example, "one time a month [for a] two-day duration" and were then penalized for calling out "two times in one month each one-day duration." [*See* Docket No. 44, at 14–22

(cleaned up).] In Plaintiff's case, he continues to argue that he was entitled to five days to be used in any configuration throughout the month, even though he had been approved for one absence of up to five days per month. [*See* Docket No. 6, at 17–19.] Plaintiff's argument insists that an individual's FMLA leave allotment is always simply the number of days multiplied by the number of instances per month, and that the employee can take use that number of days as FMLA, irrespective of the approved number of instances per month. For instance, Plaintiff's argument would mean that an employee who is entitled to four two-day absences per month may simply take off eight days that month in any configuration. The Court has already ruled, and repeats here, that this interpretation of the FMLA is incorrect. [*See* Docket No. 29, at 10–15.] Such interpretation would render the estimations made by doctors—which are made not simply in terms of the number of days, but in terms of the number of days **per absence**—meaningless.

      Second of all, as noted above, the issue in this case is whether Defendants appropriately sought recertification from Plaintiff.[1] If they did, and he did not provide it, then, as the Court previously ruled, "Calio forfeited his FMLA

---

[1] As noted in the Court's previous Opinion, Defendant was entitled to seek recertification given the facts of this case. This is true regardless of whether Plaintiff's absences were foreseeable or unforeseeable. *See* 29 C.F.R. § 825.302 (permitting employers to request recertification for foreseeable leave under certain circumstances that apply here); C.F.R. 825.303 (requiring employee to provide notice "as soon as practicable" when "the approximate timing of the need for leave is not foreseeable"). Here, there is no dispute that, whether his absences were foreseeable or unforeseeable, Plaintiff "was not getting going to recert[ify] anything" because he felt that Defendants were violating his rights. [*See* Docket No. 20-21.] As a result, his whole case rests on a misunderstanding of the regulations.

4

protections" and no violation occurred. [Docket No. 29, at 10.] Any argument that Defendants violated the FMLA merely by disciplining employees who exceeded their intermittent (i.e., frequency and duration) FMLA allotments is misguided and without merit. Significantly, Plaintiff does not argue that Defendants' "policy and practice" of violating the FMLA constituted not properly seeking recertification from employees, which is the only factual dispute in this matter.

For both of the above reasons, Plaintiff's argument for injunctive relief fundamentally mischaracterizes the issues of this case, indeed it recharacterizes the essence of the case. Therefore, he is not entitled to injunctive relief.

Moreover, even if Plaintiff's "policy and practice" argument—that Defendants "have a policy and practice of strictly enforcing monthly frequency and duration limits on intermittent FMLA leave"—aligned with the Court's previous rulings and constituted illegal activity, which it does not, the Court would not permit Plaintiff to pursue it. To permit Plaintiff to amend the Joint Final Pretrial Order in such a drastic way at this stage of litigation would constitute a miscarriage of justice. Pursuant to the Federal Rules of Civil Procedure, "[t]he court may modify the [Final Joint Pretrial Order] . . . only to prevent manifest injustice." FED. R. CIV. P. 16(e). According to the Third Circuit,

> [f]our criteria guide courts in deciding whether or not to modify a final pretrial order: (1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of

5

> disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance.

*Jacob v. Nat'l R.R. Passenger Corp.*, 63 F. App'x 610, 612 (3d Cir. 2003) (quotations omitted). The Court finds that, even if it were a legally permissible claim,[2] it would be unduly prejudicial to Defendants if Plaintiff were permitted to modify the Joint Final Pretrial Order and, in effect, drastically alter the bounds of this lawsuit. The Court also finds that there would be no reasonable means to cure that prejudice in this matter. Finally, the Court finds that this case would be dramatically disrupted by permitting the requested modification. Because Plaintiff's request to modify is not a result of non-compliance, but rather an attempt to change the thrust of this lawsuit, the Court finds that the fourth factor is irrelevant in this matter. Therefore, in considering the factors, the Court concludes that permitting Plaintiff to modify the

---

[2] Plaintiff seeks to amend to include testimony from other employees who also attempted to take more leave than they were entitled to. That is not permissible for the same reasons as explained above. Plaintiff refers to several unidentified corrections officers who, for example:

- took two one-day absences when he was entitled to one two-day absence;
- took one six-day absence when he was approved for one three-day absence;
- took two one-day absences when she was approved for one one-day absence;
- took five one-day absences when he was approved for three one-day absences;
- took five one-day absences when he was approved for three one-day absences;
- took four one-day absences when he was approved for three one-day absences.

[*See* Docket No. 44, at 15–20.] As with Plaintiff, these employees plainly exceeded their approved frequency and duration of FMLA absences. While the Court does not have all the relevant facts about those instances—as they are not in any way related to Plaintiff's case—they way they are described by Plaintiff does not constitute an FMLA violation for the exact same reasons that Plaintiff's arguments about his own case are unavailing.

Joint Final Pretrial Order—again, to try to assert a claim that has no legal merit—would not prevent manifest injustice and, as a result, will not be permitted.

Plaintiff concedes that, even if his claims were relevant, he has not sought declaratory relief under any statute, but rather has only sought "such further relief as this Court deems just and proper." [Docket No. 44, at 23.] Therefore, Plaintiff requests, at the eleventh hour, "leave to amend the [Joint Final Pretrial Order] to specifically request relief in the form of a declaratory judgment." [*Id.*] Putting aside the fact that a generic claim for relief as this court deems just and proper is woefully insufficient and creates issues of procedural due process, the Court finds that permitting such a request at this late stage of litigation would be a miscarriage of justice, as it would essentially be permitting Plaintiff to add a claim on the eve of trial. Therefore, Plaintiff is not entitled to declaratory relief in this matter, either.

### B. Remaining Damages

As the Court has by now repeatedly established, the determinative issue in this matter is whether Defendants requested recertification from Plaintiff and allowed him at least fifteen days to provide it before disciplining him. Even if Plaintiff succeeds in proving that Defendants did not meet that standard, he has failed to show that he suffered any damages as a result. Aside from the injunctive and declaratory relief—to which the Court has already determined Plaintiff is not entitled—Plaintiff seeks to "hav[e] his protected leave days restored" and to have "the negative references to his leave-taking deleted from his performance review." [Docket No. 40, at 4–5.] There is no evidence in the record that Plaintiff's protected

7

leave days need to be restored. Plaintiff argues that "his protected leave days" were "tak[en] away" and "convert[ed] . . . to unprotected sick days." [*Id.* at 1.] But, as the Court has already ruled, "the FMLA explicitly allows for an employer to require an employee to use their sick days concurrently with FMLA, as long as proper notice and designation was provided." [Docket No. 29, at 12.] Therefore, Plaintiff's argument that he is entitled to having his leave or sick days restored is meritless.

With respect to Plaintiff's desire to have any "negative references to his leave-taking deleted from his performance review," the Court reaches the same conclusion: There is no evidence that Plaintiff has presented or that is set forth in the Joint Final Pretrial Order that Plaintiff is entitled to such relief. The only references to Plaintiff's FMLA leave that appear on his performance reviews are simply to distinguish his FMLA leave days from regular sick days/absences that he took. [*See* Docket No. 44-3, Exhibit D.] For instance, Plaintiff earned a score of "Meets Standard" (the highest possible score) for the "Attendance" and "Compliance with Rules" categories on his January–June 2019 performance review. [*See id.*] The review noted that he received those scores in spite of utilizing sixteen sick days precisely **because** eleven of those sick days were FMLA protected. [*See id.*] Conversely, Plaintiff received an "Unsatisfactory" score for the "Attendance" category on his January–June 2020 performance review. [*See id.*] In that instance, the review noted that he had "been absent on 12 occasions," with only four of them being FMLA leave. [*See id.*] In other words, the notations regarding his FMLA leave are neither

8

negative nor positive references, but merely factual references used to contextualize the amount of time Plaintiff was out of work in the relevant period. Plaintiff's argument that these were "negative references" to his FMLA leave is belied by the record, by the fact that he had **more** overall absences in January–July 2019 (sixteen) than he did in January–July 2020 (twelve), but still received a higher score in the "Attendance" category during the first time frame. [*See id.*] The reference to his FMLA days was clearly meant to indicate that, in essence, he had five net absences in January–July 2019 versus eight in January–July 2020. [*See id.*] Removing that information from his performance reviews would mean that he had twelve and sixteen absences in those time periods, both of which would evidently **hurt** his scores on his performance reviews.[3] Therefore, the Court finds that because Plaintiff is not

---

[3] The performance reviews show, in relevant part, the following:

| Time Period | Absences/Sick Days | FMLA Days | Attendance Score |
|---|---|---|---|
| July–December 2018 | Unspecified | 17 | Meets Standard |
| January–June 2019 | 16 | 11 | Meets Standard |
| July–December 2019 | 7 | 5 | Meets Standard |
| January–June 2020 | 12 | 4 | Unsatisfactory |
| July–December 2020 | 17 | 15 | Meets Standard |
| January–June 2021 | 18 | 8 | Unsatisfactory |

[Docket No. 44-3, Exhibit D.] As Defendants persuasively note, "Without a reference on the performance reviews to FMLA time, an employee's review form would not accurately or fairly reflect that employee's attendance record for purposes of, among other things, promotional potential. Thus, removing references to FMLA leave time from the plaintiff's reviews would actually result in the very 'negative reference' he seeks to avoid." [Docket No. 47, at 4.]

entitled to the requested relief in this instance, either, there is no issue for the jury to decide.

Finally, "[n]ominal and punitive damages are . . . not recoverable under the FMLA." *Wright v. Impact Site Works*, Civil No. 19-18529, 2021 U.S. Dist. LEXIS 13505, at *6 (D.N.J. Jan. 25, 2021) (Bartle, J.) (citing *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 476 (E.D. Pa. 2014)). Therefore, Plaintiff has not established that he is entitled to any relief under the FMLA in this matter.[4]

The Court struggles with whether it should retain subject matter jurisdiction over the remaining state law claims under the NJFLA, a decision that is within the Court's discretion. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .") Ultimately, the Court will reluctantly decline to exercise supplemental jurisdiction for the following reasons: First, there are no equitable claims before the Court. To the extent Plaintiff disagrees with that conclusion, it is solely based on his distortion of the law, discussed above. Second, there appear to be no damages in this matter. *But see infra*, n.6. Third, Plaintiff himself admits that the only remaining claim would be for

---

[4] The **only** damages Plaintiff could possibly be entitled to would be the fees and costs associated with the filing the Complaint, in the event that Defendants were aware of such lawsuit when they reversed course regarding his discipline. But the Court has scoured the record and has found no such evidence in support of that theory. If the Court has overlooked such facts, Plaintiff is entitled to move to reconsider under Local Civil Rule 7.1(i).

emotional distress under state law (the damages relating to which appear to be nominal, as the Court has previously noted), which Plaintiff concedes is hardly worth trying: "[I]t is extremely doubtful that, having completely resolved the equitable claims, any party would be willing to go to trial solely on Calio's claim for emotional distress, regardless of whether the case is in federal or state court." [Docket No. 44, at 26.] Fourth, in light of the Court's repeated unsuccessful attempts to resolve this matter, the Court holds out hope that a state court judge who is more familiar with the NJFLA will have better luck settling this case.

### III. CONCLUSION

For the above reasons, the Court finds that Plaintiff is not entitled to relief under the FMLA in this matter. Therefore, the Court will dismiss his federal claim and decline to exercise supplemental jurisdiction. An accompanying Order shall issue.

<u>June 30, 2022</u>           s/Renée Marie Bumb
Date                  Renée Marie Bumb
                    United States District Judge